**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 22-35** |
| **ANDREW WOLF and**<br>**KRAY STRANGE** | |

## RESTITUTION MEMORANDUM[1]

In accordance with 18 U.S.C. § 2259, the United States requests the Court order

restitution in the above captioned case in the following amounts for the following victims, each

of whom has submitted a claim for restitution to which they are entitled under the law:

1) Restitution in the amount of $285,200 for Minor 1;

2) Restitution in the amount of $580,000 for Minor 4;

3) Restitution in the amount of $20,265 for Minor 5;

4) Restitution in the amount of $95,480 for Minor 7;

5) Restitution in the amount of $100,765 for Minor 9; and

6) Restitution in the amount of $33,320 for Minor 10.

---

[1] On June 23, 2022, both defendants entered open guilty pleas to the Indictment. On February 16, 2023, this Court sentenced defendant Wolf to a total of 466 months' imprisonment, to be followed by 5 years of supervised release, a $50,000 fine, a $40,000 JVTA (Justice for Victims of Trafficking Act) Assessment, a $150,000 AVAA (Andy, Vicky, and Amy Child Pornography Victim Assistance Act) Assessment, and an $800 special assessment.

On March 31, 2023, this Court sentenced defendant Strange to a total of 396 months' imprisonment to be followed by lifetime supervised release, and a $700 special assessment.

At both sentencing hearings, the Court announced its intent to order restitution for the victims in this case and, at the government's request, the Court deferred a restitution hearing to allow the government to work with the victims and their families to determine their actual and projected losses and compile restitution claims on their behalf.

The above amounts reflect conservative estimates of the full amount of the victims' losses. These amounts include actual losses that have been incurred, as well as reasonable estimates of projected losses to be incurred in the future.

Restitution is mandatory for the offense of conviction. The FBI confirmed the identities of 18 children victimized by the defendants as part of their child exploitation scheme. Of those children, 6 victims have made a request for restitution. The United States has made documentation submitted by the minor victims' respective guardians in support of their claims available to the defendants' attorneys to review, and attaches the documentation here as Exhibit A, filed under seal. Exhibit A begins with a summary chart of the restitution claims. The summary chart lists, among other information, the child victims (by minor victim number), the amount of restitution requested, and the persons to whom the amounts are to be made payable. Based on the defendants' roles as the individuals who enticed the victims to produce child pornography, received sexually explicit images from the victims and, in some instances, disseminated the images to other sex offenders on the Internet, the government submits that an order requiring the defendants to pay restitution in the amounts outlined herein is appropriate.

As of the date of this filing, the government and counsel for both defendants remain engaged in good faith discussions to determine whether the defendants will agree to pay some, part, or all of any of the restitution claims outlined herein. Should the parties reach an agreement regarding any or all of the claims, we will promptly notify the Court.

Because both defendants victimized each of these minor children while carrying out their scheme to entice the victims to self-produce child pornography and send the images to the defendants via the Internet, both defendants should be held jointly and severally liable for the full amount of these victims' losses.

2

## I.     LEGAL AUTHORITY

### A.     Restitution is Mandatory

Title 18, United States Code, Sections 2259(a) and (b)(4) mandate restitution for losses suffered by victims of child sexual exploitation.  Under § 2259, restitution covers "the full amount of the victim's losses."  § 2259(b)(1), (3).  A court may not decline to order restitution because of the defendant's economic circumstances or "the fact that the victim has, or is entitled to, receive compensation" from another source.  § 2259(b)(4)(B).

Section 2259 provides as follows:

> (a) In general.—Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter.

> (b) Scope and nature of order.—

>> (1) Directions.—Except as provided in paragraph (2), the order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses.

>> (2) Restitution for trafficking in child pornography – If the defendant was convicted of trafficking in child pornography, the court shall order restitution under this section in an amount to be determined by the court as follows:

>>> (A) Determining the full amount of a victim's losses – The court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim;

>>> (B) Determining the restitution amount – After completing the determination required under subparagraph (A), the court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000.

>> (3) Enforcement. – An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A.

3

(4) Order mandatory – (A) The issuance of a restitution order under this section is mandatory.  (B) The court may not decline to issue an order under this section because of – (i) the economic circumstances of the defendant, or (ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source.

(c) Definitions. --

***

(2) Full amount of the victim's losses - For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim, and in the case of trafficking in child pornography offenses, as a proximate result of all trafficking in child pornography offenses involving the same victim, including -

> (A) medical services relating to physical, psychiatric, or psychological care;
>
> (B) physical and occupational therapy or rehabilitation;
>
> (C) necessary transportation, temporary housing, and child care expenses;
>
> (D) lost income;
>
> (E) reasonable attorneys' fees, as well as other costs incurred; and
>
> (F) any other relevant losses incurred by the victim.

18 U.S.C. § 2259.

The government bears the burden of demonstrating, by a preponderance of the evidence, "the amount of the loss sustained by a victim as a result of the offense."  18 U.S.C. § 3664(e); *United States v. Graham*, 72 F.3d 352, 356 (3d Cir. 1995).  A restitution order is reviewed for abuse of discretion.  *Graham*, 72 F.3d at 355.  As the Third Circuit has noted, "the Federal Rules of Evidence do not apply in sentencing proceedings," *United States v. Campbell*, 295 F.3d 398, 406 (3d Cir. 2002), but "information relied upon at sentencing must have 'sufficient indicia of

reliability to support its probable accuracy.'" *United States v. Berry*, 553 F.3d 273, 280 (3d Cir. 2009). In addition, "the Confrontation Clause does not apply in the sentencing context and does not prevent the introduction of hearsay testimony at a sentencing hearing." *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007); *see also United States v. Brown*, 534 F. App'x 132, 137–38 (3d Cir. 2013).

### B. Factors to be Considered in Determining Restitution

In *Paroline v. United States*, the Supreme Court laid out the considerations necessary to determine restitution awards in child pornography cases. 572 U.S. 434 (2014). The Court stated: "At a general level of abstraction, a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Id*. at 459. The assessment does not require a "precise mathematical inquiry," and involves the use of "discretion and sound judgment." *Id.* The Court listed "a variety of factors district courts might consider in determining a proper amount of restitution," noting that "it is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper restitution amount at this point in the law's development." *Id*. at 459-60. The list of factors is neither mandatory nor exhaustive, but "could include" the following:

> The number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role. *Id*.

5

In determining the type of losses that are considered to have been "proximately caused" by the defendant's sexual exploitation crimes, courts have recognized the victims' costs of treatment and lost income resulting from the trauma of knowing that the images of their abuse are being viewed over and over again, the creation of a market for these images, the invasion of the victims' privacy, and the damage to their psychological well-being. *Paroline*, 572 U.S. at 449. *United States v. Olivieri*, 2012 WL 1118763, at *4 (D.N.J. 2012); *Crandon*, 173 F.3d at 126; 18 U.S.C. § 2259(b)(3)(A) through (F).

## II.    VICTIMS' LOSSES

Here, the government received documentation from representatives of the child victims, which details the precise loss for each victim seeking restitution and the total amount of actual and projected monetary loss incurred. *See* Sealed Exhibit A.

The defendants were directly involved in the production of the sexually explicit images of these child victims. The defendants traded in the children's images with each other. Of the victims seeking restitution, the evidence in the case also demonstrates that the defendants further distributed images of (at least) Minor 4 and Minor 7. Based upon all of the information provided by the victims, and the extent of the defendants' criminal activity, the defendants should be ordered to pay restitution to each victim as outlined herein.

### A.    Minor 1

**Minor 1 seeks $285,200 in restitution.**

Minor 1's parents report having already incurred **$5,000** in losses to date for expenses related to psychological therapy and medication for Minor 1 not covered by insurance between September 2021 and April 2023. Restitution for these losses is contemplated under subsection (c)(2)(A) of 18 U.S.C. § 2259.

Minor 1's parents also report projected future losses of **$280,200** for future psychological therapy sessions, psychiatric care, potential residential treatment, and medication for Minor 1 through age 40. It is anticipated that Minor 1 will be covered by his parents' health insurance through December 2029, during which time Minor 1 and his parents will incur approximately **$81,600** in losses related to Minor 1's psychological therapy, psychiatric care, and medication. During this time, it is expected that Minor 1 will attend approximately three psychological therapy sessions per month at a cost of $150 per session ($36,000 total over 80 months), resulting in an estimated out-of-pocket cost of **$9,600** after insurance coverage is applied. It is expected that Minor 1 will pay approximately **$12,000** in prescription copays through December 2029 for psychological/psychiatric medications he is currently prescribed. It is expected that Minor 1 will require psychiatric medical appointments every other month, for a total of 40 appointments through December 2029, each of which requires a $50 copay, for a total of **$2,000** in psychiatrist visit copays. It is anticipated that Minor 1 may need to attend a residency program for addiction counseling and/or trauma treatment at least two times during the next 80 months, with an estimated out-of-pocket cost of **$50,000.**

When Minor 1 is no longer covered by his parents' health insurance, it is expected that Minor 1 will continue to require psychological therapy, psychiatric care, and medication as a result of the defendants' victimization of him, until he is at least 40 years old. Minor 1 will incur projected losses of approximately **$198,600** during this time. During this time, it is expected that Minor 1's health insurance plan will be less generous (i.e., have a higher deductible) than his parents' health plan. It is expected that Minor 1 will attend approximately two psychological therapy sessions per month at a cost of $175 per session for 168 months, for a total expected loss of **$58,000.** It is expected that Minor 1 will pay **$67,200** in prescription copays through age 40 for the psychological/psychiatric medications which he is currently prescribed and expects to

7

continue taking.  It is expected that Minor 1 will require psychiatric medical appointments every

other month through age 40, for a total of 84 appointments with a $150 copay, for a total of

**$12,600** in psychiatrist visit copays.  It is anticipated that Minor 1 may need to attend a residency

program for addiction counseling and/or trauma treatment at least two times between age 26 and

age 40, with an estimated out-of-pocket cost of **$50,000.**  It is also anticipated that Minor 1 may

incur miscellaneous costs of approximately **$10,000** related to family counseling, legal fees, and

other costs related to his psychological and psychiatric care.

Based on the foregoing, the government requests the Court order **$285,200 in restitution**

**for Minor 1.**

### B.     Minor 4

**Minor 4 seeks $580,000 in restitution.**

Minor 4 has been diagnosed with neurological trauma, including stress-induced

migraines, anxiety disorder, and post-traumatic stress disorder.  He has also vocalized suicidal

thoughts.  He is currently under the care of a neurologist and psychological therapist.  His

parents have incurred financial losses as a result of paying for his neurological and psychological

care, and they anticipate future losses for continued care, family therapy, and individual therapy

for Minor 4.  Restitution for these losses is contemplated under subsection (c)(2)(A) of 18 U.S.C.

§ 2259.

To date, Minor 4's parents have incurred **between $5,500 and $7,000** in losses for

medical and psychological treatment for Minor 4.

Currently, Minor 4's recommended treatment plan includes individual therapy on a

weekly basis and family therapy at least one time per month, at a cost of $195 per session.

Minor 4 expects to receive individual therapy on a weekly basis until he is at least 50 years old,

which will result in at least **$344,760** in future losses.  Minor 4 expects to receive individual

8

therapy two times per month for the remainder of his life expectancy (an additional 24 years), which will result in **$121,680** in additional future losses.  Minor 4 and his parents expect to attend monthly family therapy sessions until Minor 4 turns 30 years old (175 additional sessions), which will result in **$34,125** in additional future losses.  Using these calculations, a projected future loss of at least **$500,565** is reasonably likely to be incurred for continued individual and family therapy sessions.

Minor 4 was already receiving neurological care at the time he was victimized by the defendants in this case.  However, as documented by his neurologist, Minor 4 experienced an increase in headaches around the time of his victimization, which required additional treatment and diagnostic workups.  It is likely that Minor 4 will need ongoing treatment (medication and cognitive behavioral therapy) for headaches, which have been exacerbated by the defendants' conduct in this case.  The remaining amount **($72,435)** of Minor 4's $580,000 restitution claim is expected to cover future loss incurred for continued neurological care.

Based on the foregoing, the government requests that the Court order **$580,000 in restitution for Minor 4.**

C.      **Minor 5**

**Minor 5 seeks $20,265 in restitution.**

To date, Minor 5's parents have incurred financial losses for costs related to Minor 5's ongoing psychological therapy, intensive outpatient therapy, and partial hospitalization in early 2022, and transportation to and from the locations where Minor 5 is receiving and has received these services.  In total, Minor 5's parents have incurred **$9,500** in losses for out-of-pocket costs related to Minor 5's psychological therapy and **$4,687** in losses related to transportation.  Restitution for these losses is contemplated under subsections (c)(2)(A) and (c)(2)(C) of 18 U.S.C. § 2259.

9

Minor 5's current therapist recommends at least one year of additional individual therapy for Minor 5 at a rate of $175 per visit, for a total of 31 additional visits.  This treatment plan will result in a projected loss of **$5,425** for the cost of the sessions and **$653** in additional transportation costs, for a total projected loss of **$6,078.**

Based on the foregoing, the government requests that the Court order **$20,265 in restitution for Minor 5.**

D.     **Minor 7**

**Minor 7 seeks $95,480 in restitution.**

Minor 7 has been attending outpatient therapy with a licensed professional counselor due to the defendants' actions, and it is expected that Minor 7 will require ongoing therapy well into adulthood.  Restitution for these losses is contemplated under subsection (c)(2)(A) of 18 U.S.C. § 2259.

 To date, Minor 7's parents have incurred approximately $80 in losses in copays for Minor 7's sessions with his counselor.  (Most of the cost of these sessions is covered by Minor 7's parents' generous health insurance policy.)

It is expected that Minor 7 will continue to need psychological therapy for most of the rest of his life.  It is anticipated that Minor 7 will be covered by his parents' health insurance until he reaches age 26.  If Minor 7 attends two therapy sessions per month during this time (216 sessions x $10 copay), he and his parents will incur **$2,160** in loss for copays not covered by their health insurance.  If Minor 7 continues to attend psychological therapy sessions two times per month for an additional 21 years (30 years total) at the current session rate of $185 per hour, he will incur **$93,240** in additional losses.

For these reasons, the government requests the Court order **$95,480** in restitution for Minor 7.

E.      **Minor 9**

**Minor 9 seeks $100,765 in restitution.**

To date, Minor 9's parents have incurred **$4,565** in actual losses for costs related to minor 9's need for extra academic support in mathematics ($4,180 in tutoring sessions since 2021) and therapeutic support for Minor 9's mother ($385 in counseling costs not covered by insurance in 2022).

It is anticipated that Minor 9 and his parents will incur future losses of at least **$96,200** for costs related to psychological therapy for Minor 9, a neuropsychological evaluation for Minor 9, residential therapeutic support for Minor 9, ongoing counseling sessions for Minor 9's mother, and ongoing academic support in mathematics for Minor 9.  It is anticipated that Minor 9 will require at least two years of weekly individual therapy at the rate of $225 per session, for a total loss of **$23,400.**  To determine Minor 9's future therapeutic needs, it is expected that he will undergo a neuropsychological evaluation, which is anticipated to cost **$4,500.**  It is anticipated that Minor 9 will attend a residential therapeutic support program offered by a wilderness therapy provider, which will result in **$59,450** in total projected losses.  It is also anticipated that Minor 9's mother will require additional counseling sessions at the rate of $55 per session through 2025, for a projected loss of **$1,650** not covered by insurance.  It is anticipated that Minor 9 will continue to require mathematics tutoring at the rate of $100 per hour until he graduates high school, for a total projected loss of **$7,200.**

Restitution for these losses is contemplated under subsections (c)(2)(A), (C), and (F) of 18 U.S.C. § 2259.

Based on the foregoing, the government requests that the Court order **$100,765 in restitution for Minor 9.**

### F.      Minor 10

**Minor 10 seeks $33,320 in restitution.**

To date, Minor 10's parents have incurred **$1,465** in financial losses for costs related to Minor 10's ongoing psychological therapy.

It is anticipated that Minor 10 will require approximately 5 years of additional psychological therapy.  During this time, it is expected that Minor 10 will attend approximately 30 sessions per year at an average rate of $200 per session.  Accounting for a 3% annual inflation, it is expected that Minor 10 and his parents will incur **$31,855** in projected losses related to the cost of ongoing psychological therapy.

Restitution for these losses is contemplated under subsection (c)(2)(A) of 18 U.S.C. § 2259.

Based on the foregoing, the government requests that the Court order **$33,320 in restitution for Minor 10.**

## III.    CONCLUSION

The United States requests this Court find the full amount of the victims' losses as outlined above, and that this Court orders restitution for each victim who has submitted a restitution claim, with joint and several liability for payment by both defendants.  The government requests that Court order restitution in the following amounts:

1) Restitution in the amount of $285,200 for Minor 1;

2) Restitution in the amount of $580,000 for Minor 4;

3) Restitution in the amount of $20,265 for Minor 5;

4) Restitution in the amount of $95,480 for Minor 7;

5) Restitution in the amount of $100,765 for Minor 9; and

6) Restitution in the amount of $33,320 for Minor 10.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*s/ Kelly Harrell*
JOSEPH MINNI
KELLY HARRELL
Assistant United States Attorneys

13

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2023, I electronically filed the foregoing with the Clerk

of the Court by using the CM/ECF system which will send a notice of electronic filing to all

parties.

s/ *Kelly Harrell*
KELLY HARRELL
Assistant United States Attorney